UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

THOMAS RICHARD PERKINSON, JR.,

                Plaintiff,

  -against-                                                          5:21-CV-0300 (LEK)

KILOLO KIJAKAZI, *Acting Commissioner
of Social Security*,

                Defendant.
─────────────────────────────────────────────

## MEMORANDUM-DECISION AND ORDER

On March 16, 2021, Plaintiff Thomas Richard Perkinson, Jr., commenced this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") denying him Supplemental Security Income ("SSI") for lack of disability. Dkt. No. 1 ("Complaint"). For the reasons set forth below, the Court affirms the decision of the Commissioner and dismisses Plaintiff's Complaint.

**I.    BACKGROUND**

    **A.  Factual Background**

Plaintiff filed for SSI on November 4, 2016. Dkt. No. 11 ("Administrative Record" or "Transcript") at 138.[1] At the time of filing, Plaintiff was not working. According to his disability report, he stopped working in 2000 because he "couldn't take the stress and anxiety of being around . . . people as a [grocery store] cashier." Tr. at 157. Plaintiff has never worked since then. Id. at 158. Despite stopping work in 2000, he alleges he became disabled on June 1, 2016, because at that point, his social anxiety disorder, agoraphobia, severe depression, and panic

───────────────────────────

[1] For the avoidance of doubt, the Court uses the large, bolded numbers that appear in the bottom righthand corner of the Administrative Record when referring to specific pages therein.

attacks became "severe enough to keep [him] from working[.]" Id. About three weeks prior, Ray Forbes, M.D., Plaintiff's primary care provider, observed in his medical notes that Plaintiff "presents with anxiety and severe agoraphobia,"[2] but Dr. Forbes made no mention of depression. Id. at 233.

   1. *Consultative Psychiatric Examination Conducted by Dennis Noia, M.D.*

A month after filing for SSI, Plaintiff saw Dennis Noia, M.D., who performed a one-time consultative psychiatric examination of Plaintiff. Tr. at 219. Dr. Noia observed that Plaintiff does "not report any significant depressive or manic related symptoms, or symptoms of a formal thought disorder." Id. at 220. However, Dr. Noia also noted that Plaintiff "admits to symptoms of panic attacks, including sweating, trembling, heart palpitations, difficulty breathing, and fear of losing control," which "happen[] daily." Id. In addition, Plaintiff "admits to symptoms of anxiety, including being easily fatigued, [and having] increased irritability, restlessness, hypervigilance, difficulty concentrating, excessive apprehensiveness or worry, and fearfulness of crowds and being around people," and "usually wakes up numerous times nightly." Id.

Dr. Noia also examined Plaintiff's mental status and found that his "demeanor and responsiveness to questions w[ere] cooperative. His manner of relating, social skills, and overall presentation w[ere] adequate." Id. Dr. Noia also evaluated his speech and thought processes, finding the former "fluent" and the latter "coherent and goal directed with no evidence of

---

[2] "The essential feature of agoraphobia is listed [in the DSM-IV-TR] as anxiety about being in places or situations from which escape may be difficult or embarrassing or in which help might not be available in case of a [p]anic [a]ttack. This anxiety typically leads to avoidance of situations that might include being alone outside one's home, being in a crowd of people, traveling with public transportation, and the anxiety or phobic avoidance is not better accounted for by another mental disorder." Ellis v. Comm'r of Soc. Sec., No. 11-CV-1205, 2012 WL 5464632, at *6 n.11 (N.D.N.Y. Sept. 7, 2012), rep. rec. adopted, Ellis v. Astrue, 2012 WL 5464612 (N.D.N.Y. Nov. 8, 2012).

delusions, hallucinations, or disordered thinking." Id. at 221. Dr. Noia further observed that Plaintiff's "attention and concentration w[ere] intact[,]" as well as "[h]is recent and remote memory skills." Id. "He was able to do counting, [and] simple calculations," and Dr. Noia estimated that Plaintiff's "intellectual function is . . . in the average range." Id. Plaintiff also reported to Dr. Noia that "he is able to dress, bathe, and groom himself[,]" in addition to cooking, cleaning, and managing money. Id. However, Plaintiff also told Dr. Noia that he "does not do laundry, avoids shopping . . . rarely drives, and does not use public transportation." Id.

In conclusion, Dr. Noia determined that:

> Vocationally, [Plaintiff] appears to have no limitations in understanding and following simple instructions and directions. He appears to have mild limitations performing simple tasks. He appears to have mild limitations performing complex tasks. He appears to have no limitations maintaining attention and concentration for tasks. He appears to have mild limitations regarding his ability to attend to a routine and maintain a schedule. He appears to have no limitations regarding his ability to learn new tasks. He appears to have no limitations regarding his ability to make appropriate decisions. He appears to be able to relate to and interact moderately well with others. There appear to be marked limitations regarding his ability to deal with stress.
>
> Difficulties are caused by psychiatric problems.
>
> Results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with [Plaintiff's] ability to function on a daily basis.

Id. at 221–22.[3] Dr. Noia added: "[I]t is hoped that with intervention and support, he will find symptom relief and maximize his abilities." Id. at 222. Dr. Noia also clarified that Plaintiff "was

---

[3] Under the regulations, having a "marked" limitation in a particular area means that one's ability to function in that area independently, appropriately, effectively, and on a sustained basis is seriously limited. See 20 C.F.R. § 416.926(a)(2)(i) ("We will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. . . . 'Marked limitation also means a limitation that is 'more than moderate' but 'less than extreme.'").

examined for a consultative examination," and that "[n]o doctor-patient relationship exists or is implied by this examination." Id.

### 2. Plaintiff's Conditions from 2016 through 2019

In 2016, Plaintiff also visited his primary care provider, Dr. Forbes, who observed that Plaintiff was taking Xanax to deal with his agoraphobia and panic attacks. Id. at 258. Upon revisiting Dr. Forbes in 2017, Plaintiff "continue[d] to be paralyzed by agoraphobia/anxiety," and reported to Dr. Forbes that he only left the house "9 times in past 3 years." Id. at 259. Dr. Forbes recommended Plaintiff restart Lexapro. Id. at 260. In 2018, Dr. Forbes observed that Plaintiff was "worsening of depression" and was "thinking of suicide without concrete plan." Id. at 276. By 2019, Plaintiff was taking Remeron, in addition to Xanax and Lexapro. Id. at 270.

Apart from the above conditions, Dr. Forbes did not observe other negative neurological symptoms during his physical examinations of Plaintiff during this three-year period, even observing in 2018 that Plaintiff was "[a]lert and oriented," with an "appropriate" "[a]ffect," and that his "[s]peech is articulate and fluent." Id. at 282. Moreover, Plaintiff did not receive cognitive behavioral therapy during this period, nor did he ever receive inpatient treatment at any psychiatric facility. Id. at 47.

### 3. Plaintiff's Hearing Testimony

On August 13, 2019, Plaintiff appeared via videoconference in a hearing before Shawn Bozarth, Administrative Law Judge ("ALJ"). At the hearing, Plaintiff testified that he previously earned an "Associate's [degree] in science for web technology," and that he presently lives with and is supported by his family. Id. at 43–44. He also receives Medicaid. Id. at 44. Plaintiff is able to drive, but "[o]nly in emergencies," and he is incapable of taking public transportation because of his "panic attacks." Id.

Plaintiff also testified that he is capable of taking his medication independently, using "one of those pill cases, weekly pill cases[,]" to do so. Id. at 48. According to Plaintiff, side effects from his medication includes "dizziness" and nausea[,]" and that "it impairs [his] ability to drive." Id. He is capable of dressing and showering himself, and tries to do so "every other day but sometimes it ends up being much longer than that." Id. at 49.

Plaintiff then testified that, on an average day, he "listen[s] to music and watch[es] videos on YouTube" for "probably six to eight hours . . . to keep [his] mind occupied[,]" and sometimes visits other websites "mostly [to] just read the . . . news like politics" or to go to Facebook to contact family and a few close friends. Id. at 49–50. He occasionally plays video games with one of these close friends online, but "[i]t's not very often" because Plaintiff "can't sit there and do the same thing for a long, long period of time." Id. at 50–51. He occasionally washes the dishes but his "stepfather does [his] laundry and . . . takes care of everything else [i.e., chores] pretty much." Id. at 51. While he usually does not cook, id., he has written elsewhere on his Function Report that he prepares frozen food or instant meals for himself "daily" and claims to have "taught [himself] how to cook." Id. at 173.

B.  The ALJ's Decision

On September 3, 2019, the ALJ determined that Plaintiff "is not disabled under section 1614(a)(3)(A) of the Social Security Act." Tr. at 24. The ALJ reached this conclusion by proceeding through the five-step sequential evaluation process for evaluating disability under the Social Security Act. Id. at 16 (citing 20 C.F.R. § 416.920(a)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 27, 2016, the application date." Tr. at 17. At step two, the ALJ found that Plaintiff "has the following severe impairments: panic disorder and generalized anxiety

disorder." Id. At step three, the ALJ determined that neither of these impairments, "meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)[,]" even when "considered . . . in combination." Id. at 17–18.

At step four, the ALJ determined that:

> [Plaintiff] has the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is capable of work in low stress jobs, which are jobs that I define as goal oriented and without assembly line, piece work, or numerical production quota pace, a job in which the individual is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine, and a job in which he has only occasional contact with supervisors, co-workers, and customers.

Id. at 19. In reaching this finding, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the . . . symptoms" he alleged, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 20.

The ALJ pointed to Plaintiff's "reports of difficulties using his memory, anxiety, tense behavior, and agoraphobia," as evidentiary support for moderate limitations in (1) understanding, remembering, or applying information; (2) concentration and maintaining pace; (3) interacting with others; and (4) adapting or managing oneself. Id. at 21. Accordingly, the ALJ determined that Plaintiff should be limited "to a range of low stress work," specifically tailored to account for each limitation. Id. According to the ALJ, however, "greater limitations are not supported by the evidence." Id. In reaching this conclusion, the ALJ first pointed to medical records, including Dr. Forbes' medical notes, and Plaintiff's "activities of daily living" that the ALJ claimed to conflict with Plaintiff's self-reports of disabling symptoms. Id.

The ALJ then recounted his analysis of the opinion evidence of record. First, the ALJ found that the opinion of K. Lieber-Diaz, Psy.D., a State agency medical consultant who opined that Plaintiff's mental impairments were not severe, only deserved "partial weight." Id. at 22. Although "Dr. Lieber-Diaz has program knowledge and provided a detailed explanation based on the evidence existing at the time of [her] review" in December 2016, her opinion was "inconsistent" with the consultative examination. Id. Moreover, Dr. Lieber-Diaz "was only able to perform a record review and was not able to consider more recent records[,]" which showed that Plaintiff "had 'severe' mental impairments[,]" such as agoraphobia and panic attacks. Id.

Second, the ALJ found that the opinion of the consultative examiner, Dr. Noia—who determined that Plaintiff "appear[ed]" to have "marked limitations . . . dealing with stress," id. at 221–22—also only deserved "partial weight." Id. at 22. This was because:

> Th[e] opinion has some consistency with the generally normal consultative examination findings and the claimant's reports of significant symptoms at the consultative examination [but was only] based on a single examination and generally relied on [Plaintiff's] self-reported symptoms. Additionally, none of the objective mental status findings show more than a moderate limitation in functioning. Furthermore, [Dr. Noia] did not provide a detailed rationale for the assessed limitations or an explanation for the assessed diagnoses. Finding more than a moderate limitation in any area is also inconsistent with the other medical notes that generally show normal findings.

Id. Finally, the ALJ "g[a]ve the opinion of Miranda Mohabir, M.D., a treating source, little weight," in part, because her "opinion was based on only two visits for medication refills," and that she provided Plaintiff "no other treatment." Id.[4]

---

[4] Plaintiff argues "no such opinion exists in the record[,]" and that "[t]he only point in the record referring to Dr. Mohabir was Exhibit 6F, in which [s]he states [s]he does not treat Plaintiff." Dkt. No. 14 ("Plaintiff's Brief") at 6 n.4 (citing Tr. at 245). However, Plaintiff acknowledged Dr. Mohabir in his hearing testimony, confirming that "she prescribes my medication." Id. Plaintiff also identified her as one of his prescribing physicians in the Claimant's Medications form he

7

Because Plaintiff has no past relevant work, the ALJ then proceeded to step five, and found that based on Plaintiff's RFC, age, education, and the relevant guidelines, Plaintiff would be able to perform the requirements of representative occupations such as: "Kitchen Helper," "Hand Packer," or "Laborer, Warehouse Worker." Id. at 23. Accordingly, the ALJ determined that a finding of "not disabled" was appropriate. Id.

**C. The Present Action**

Plaintiff commenced suit in this Court on March 16, 2021, to challenge the denial. See Compl. Plaintiff primarily argues that the ALJ's RFC determination at step four is unsupported by substantial evidence because he "failed to properly consider the opinion of . . . Dr. Noia." Pl.'s Br. at 4. Dr. Noia found in his consultative examination that "Plaintiff had a marked limitation on his ability to tolerate stress," id. at 8 (citing Tr. at 222), and Plaintiff claims that "[u]nder SSR 85-15, the inability to tolerate work stress is preclusive." Id. at 9.

Plaintiff advances several arguments in support of his position that the ALJ erred in only affording Dr. Noia's opinion partial weight. First, Plaintiff argues that the ALJ was wrong to discount the opinion for being "based on a single examination." Id. at 5. Plaintiff argues that giving one examination is precisely the role of a consultative examiner, and therefore his opinion should not be discounted for only being based on one examination. Id. Second, Plaintiff claims that "Dr. Noia was the *only* examining medical source to provide an opinion regarding Plaintiff's condition," and therefore, his opinion should have been granted "*more* weight rather than less." Id. at 6 (emphasis in original).

---

submitted to the Social Security Administration. Tr. at 212. Regardless of whether "this is . . . proof that the ALJ mischaracterized the record to fabricate an additional opinion," Pl.'s Br. at 6 n.4, Plaintiff concedes that "no harm . . . results from the ALJ's granting little weight to [her] opinion that does not exist," id.

Third, Plaintiff argues that the ALJ improperly discounted the opinion for relying on Plaintiff's own subjective reports of his symptoms. Id. at 6–7. Fourth, Plaintiff argues that the ALJ was wrong to discount the opinion for its failure to provide a more detailed rationale for the assessed limitations, such as Plaintiff's "marked limitations dealing with stress," since no such level of detail is required. Fifth, Plaintiff claims that the ALJ erred in discounting Dr. Noia's opinion because of supposed inconsistences with medical records. Id. at 8. Within Plaintiff's fifth argument, Plaintiff takes issue with the ALJ having referred to "mental status examinations" conducted by Dr. Forbes, and argues that "the exhibits in question did not contain any mental status examinations." Id.

In response, Defendant argues that the ALJ's weighing of Dr. Noia's opinion was proper and that the ALJ's decision to deny disability is supported by substantial evidence in the record. See generally Dkt. No. 17 ("Defendant's Brief"). Defendant also suggests that even if the ALJ had afforded Dr. Noia's opinion greater weight, Plaintiff has failed to show why that would have resulted in "greater mental limitations than those included in the [ALJ's] RFC," id. at 13 (citing Proper v. Astrue, No. 6:10- CV-1221, 2012 WL 1085812, at *13 (N.D.N.Y. Feb. 28, 2012), rep. rec. adopted, 2012 WL 1085810, at *4 (N.D.N.Y. March 30, 2012) ("The plaintiff bears the burden to show that [his] RFC is more limited than that found by the ALJ.")), especially since the ALJ included a "low stress restriction in the RFC," Def.'s Br. at 14.

## II. LEGAL STANDARD

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied[5] and whether substantial evidence supported the decision.

---

[5] The regulations regarding the evaluation of medical evidence were amended for claims filed after March 27, 2017. Since Plaintiff's application was filed prior to the effective date of the new

9

Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). While an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record, see Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"), the ALJ cannot "pick and choose evidence in the record that supports his conclusions." Cruz v. Barnhart, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

When claiming error, the plaintiff bears the burden to show he was harmed by it. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is

---

regulations, the pre-2017 standards apply. See, e.g., Ortiz v. Kijakazi, No. 20-CV-1398, 2022 WL 4363993, at *4 n.6 (Kahn, J.).

harmful normally falls upon the party attacking [an] agency's determination."). While the Ninth Circuit requires a plaintiff seeking remand to show a "substantial likelihood of prejudice," McLeod v. Astrue, 640 F.3d 881, 887–88 (9th Cir. 2011) (holding that Shinseki applies to Social Security cases as well as Veterans Affairs cases), the Second Circuit has not definitively ruled on the required showing. In fact, some district courts within the Second Circuit have found that the "mere probability" or "possibility" of prejudice to a Social Security claimant is enough to warrant remand to the Commissioner. See, e.g., Koutrakos v. Astrue, 906 F. Supp. 2d 30, 39 (D. Conn. 2012).

### III. DISCUSSION

Plaintiff's argument for remand rests exclusively upon Plaintiff's theory that the ALJ erred when he afforded Dr. Noia's opinion only "partial weight." There are two statements in Dr. Noia's opinion that are arguably more favorable to Plaintiff: (1) "There appear to be marked limitations regarding [Plaintiff's] ability to deal with stress[,]" and (2) "[Plaintiff's psychiatric difficulties] may significantly interfere with [his] ability to function on a daily basis." Id. at 222. The ALJ discounted the latter of these two statements in part because Dr. Noia "did not provide a detailed rationale" for the diagnosis or point to any medical evidence supporting it. Despite Plaintiff's argument to the contrary, Pl.'s Br. at 7 (citing Tr. 220–22), the ALJ was well within his discretion to discount it for its lack of supportability in the opinion itself, and in the greater record. In fact, it was his obligation to do under the regulations. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The ALJ discounted Dr. Noia's opinion about Plaintiff's

marked limitation on tolerating stress for the same reason, as well as the fact that "[f]inding more than a moderate limitation in any area is also inconsistent with the other medical notes that generally show normal findings." Id. at 22; see 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The Court also agrees with Defendant that the ALJ did not err when he considered the brief length of Dr. Noia's relationship with Plaintiff when weighing Dr. Noia's opinion. The fact that consultative examinations typically occur only once does not relieve an ALJ of his obligation to evaluate the opinions authored by consultative examiners in accordance with the regulations. See 20 C.F.R. § 416.927(c)(2)(i) (instructing ALJs to consider the length of the treatment relationship and the frequency of examinations). Plaintiff's argument that Dr. Noia's opinion should have been afforded more weight because Dr. Noia was the only examining source to provide an opinion, Pl.'s Br. at 6, similarly fails. Plaintiff has failed to point to any case or regulation that would permit the ALJ to categorically privilege Dr. Noia's opinion over other evidence in the record solely on Plaintiff's stated ground, to the detriment of the other factors listed in 20 C.F.R. § 416.927.

As for Plaintiff's argument that the ALJ improperly discounted Dr. Noia's opinion for relying on Plaintiff's own subjective reports of his symptoms, Pl.'s Br. at 6–7, this simply mischaracterizes what the ALJ actually did in his analysis. Contrary to Plaintiff's assertion, id. at 7 (citing Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)), the ALJ did not discount Dr. Noia's opinion simply because it relied on Plaintiff's subjective complaints. As this Court has pointed out before, "Green-Younger stands for the proposition that a treating physician's opinion that is adequately supported by medical evidence is not undermined because the opinion

also relies on the claimant's subjective complaints." Gorman v. Comm'r of Soc. Sec., No. 12-CV-0939, 2013 WL 4049978, at *4 (N.D.N.Y. Aug. 9, 2013) (Kahn, J.). But here, as in Gorman, the ALJ pointed to other record evidence that conflicted with Plaintiff's subjective complaints to show that Dr. Noia's opinion was not adequately supported by the medical evidence. That record evidence included Dr. Forbes' medical notes over a three-year period and Plaintiff's very limited history of psychiatric visits.[6] The ALJ did not discount the opinion simply because it relied on Plaintiff's subjective complaints, which would have been error under Green-Younger. Accordingly, the Court finds that the ALJ did not err when he only afforded Dr. Noia's opinion partial weight, and that substantial evidence supports his decision.

The Court also notes that even if the ALJ made an error when weighing Dr. Noia's opinion, Plaintiff has failed to show how such an error would have harmed him. In fact, the Court has reason to believe that affording Dr. Noia's opinion greater weight could have resulted in a less favorable determination for Plaintiff. Dr. Noia's opinion, in the aggregate, is actually less generous to Plaintiff than the ALJ's decision on several fronts relevant to the RFC analysis. For instance, Dr. Noia opined that Plaintiff "appears to have no limitations in understanding and following simple instructions and directions[,]" "mild limitations performing simple [and complex] tasks[,]" and "no limitations regarding his ability to learn new tasks." Tr. at 221–22. The ALJ, however, concluded that Plaintiff "has a moderate limitation" "[i]n understanding, remembering, or applying information[.]" Id. at 18.

---

[6] Plaintiff also takes issue with the ALJ having relied on "mental status examinations" conducted by Dr. Forbes as evidence that was inconsistent with Plaintiff's own self-reports, and argues that "the exhibits in question did not contain any mental status examinations." Pl.'s Br. at 8. But this is untrue. See, e.g., Tr. 234, 238, 242, 274 (Dr. Forbes' notes on Plaintiff's mental status).

Dr. Noia also opined that Plaintiff "appears to have no limitations maintaining attention and concentration for tasks[,]" id. at 221–22, whereas the ALJ concluded that Plaintiff "has a moderate limitation" "[w]ith regard to concentrating, persisting, or maintaining pace," id. at 18. The ALJ also concluded that Plaintiff "has a moderate limitation in adapting or managing oneself[,]" id., even though Dr. Noia only opined that Plaintiff has "mild limitations regarding his ability to attend to a routine and maintain a schedule[,]" and "appears to have no limitations regarding his ability to make appropriate decisions[,]" id. at 221–22.

With respect to Dr. Noia's favorable opinion to Plaintiff that there were "marked limitations regarding his ability to deal with stress," it remains to be seen how the ALJ's RFC analysis at step four would change if the ALJ had given this statement more weight.[7] The ALJ expressly recognized Plaintiff's aversion to stress by limiting him "to a range of low stress work" in his RFC determination. Tr. at 21. The ALJ restricted him to "goal directed work with only occasional decision making . . . without assembly line, piece work, or numerical production quota pace[.]" Id. The ALJ also determined that Plaintiff should "only [have] occasional contact with supervisors, co-workers, and customers[,]" and should be "limited to only occasional changes of workplace setting and occasional changes to workplace routine." Id.

"[D]istrict courts in [the Second] Circuit have [routinely] held that limiting a claimant to low stress environments [does] not prevent them from performing unskilled work." Colon-Torres v. Colvin, No. 12-CV-1591, 2014 WL 296845, at *4 (N.D.N.Y. Jan. 27, 2014) (citing Howe v. Colvin, No. 12-CV-6955, 2013 WL 4534940, at *18 (S.D.N.Y. Aug. 27, 2013) and Webb v.

---

[7] Of course, if Plaintiff's panic disorder and generalized anxiety disorder had "result[ed] in . . . [a] 'marked' limitation of two, of the four areas of mental functioning" under the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00.A.2.b, he would have been entitled to a finding of disability at step three of the ALJ's analysis. However, the general ability to tolerate stress is not one of those listed areas of mental functioning.

Astrue, No. 11-CV-0094, 2012 WL 589660, at *6 (N.D.N.Y. Feb. 22, 2012)). Here, the ALJ made clear that, although Plaintiff's ability to respond to the demands of work limits him to performing "a range of low stress work," Tr. at 21, Plaintiff retains the ability to perform the mental demands of unskilled work, id. In arriving at this conclusion, the ALJ specifically tailored his RFC analysis to accommodate Plaintiff's aversion to stress. Id.; see also Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *5–6 (explaining that "[t]he reaction to the demands of work (stress) is highly individualized" for claimants with mental impairments, and "emphasiz[ing] the importance of thoroughness in evaluation on an individualized basis.").[8] Therefore, even if the ALJ erred when discounting Dr. Noia's opinion regarding Plaintiff's ability to tolerate stress, Plaintiff has failed to show how such an error possibly harmed him.

## IV.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

---

[8] Although the ALJ expressly accounted for Plaintiff's general aversion to stress, it is worth noting that "[c]ourts have routinely held that RFC determinations can adequately account for a claimant's stress without specifically referencing a stress limitation." Jennifer Lee W. v. Berryhill, No. 18-CV-64, 2019 WL 1243759, at *4 (N.D.N.Y. Mar. 18, 2019) ("although the ALJ did not explicitly mention plaintiff's ability to manage stress in his RFC determination, his ultimate conclusion that plaintiff could perform simple tasks adequately addressed any limitations that plaintiff had in this functional area" (quoting Clemons v. Comm'r of Soc. Sec., No. 16-CV-658, 2017 WL 766901, at *6 (N.D.N.Y. Feb. 27, 2017))).

**IT IS SO ORDERED.**

DATED:  September 29, 2022
        Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge